# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIMBERLY M. CULOTTA | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No. SAG-10-cv-3137 |
| | * |
| MICHAEL J. ASTRUE, | * |
| Commissioner of Social Security, | * |
| | * |
| Defendant. | * |

******

## AMENDED MEMORANDUM

Kimberly M. Culotta (sometimes referred to as "Claimant" or "Ms. Culotta") brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for supplemental security income ("SSI") payments under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. Pending, by their consent, are the parties' cross-motions for summary judgment. ECF Nos. 15, 20. No hearing is necessary. Loc. R. 105.6. For the reasons set forth below, both parties' motions for summary judgment are DENIED, the decision of the Commissioner is VACATED, and the case is REMANDED for further proceedings consistent with this Memorandum.

### I. BACKGROUND

Ms. Culotta applied for SSI on August 19, 2008, alleging that she has been disabled since July 30, 2008. Tr. 120, 127. Her claim was denied initially and upon reconsideration. Tr. 68, 74. Claimant filed a timely request for a hearing and appeared, with representation, at a hearing

1

before the Honorable Melvin G. Olmscheid, Administrative Law Judge ("ALJ") on February 10, 2010. Tr. 24-62.

In a written decision dated March 9, 2010, the ALJ denied Ms. Culotta's claim, concluding that she had not been under a disability within the meaning of the Social Security Act at any time from August 19, 2008 through the date of the decision. Tr. 9. The Appeals Council denied Ms. Culotta's request for review on September 18, 2010, making the ALJ's decision the final, reviewable decision of the Commissioner. Tr. 1.

**II. STANDARD OF REVIEW**

The function of this Court is not to review Ms. Culotta's claim *de novo* or reweigh the evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987); *see* 42 U.S.C. § 405(g) (2009).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury. *Johnson v. Califano,* 434 F.Supp. 302, 307 (D.Md.1977). Usually, if substantial evidence supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law.

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,* 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Coffman,* 829 F.2d at 519; *Vietek v. Finch,* 438 F.2d 1157, 1158 (4th Cir.1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of SSI, the Commissioner has promulgated regulations that set forth the following five-step sequential evaluation procedure.

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq*. If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.
>
> (3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.
>
> (4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.
>
> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. If the claimant suffers solely from exertional impairments,[1] the Medical–Vocational guidelines, as defined in Part 404, Subpart P, Appendix 2 ("Guidelines"), provide rules to be applied in determining whether a claimant is disabled. The Commissioner bears the burden of proof at step five. *Pass v. Chater*, 65 F.3d

---

[1] Impairments may be exertional or non-exertional. An exertional limitation is one that affects the claimant's ability to meet the strength demands of certain jobs. 20 C.F.R. § 416.969a(b). A non-exertional impairment is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not." *Gory v. Schweiker,* 712 F.2d 929, 930 (4th Cir. 1983). "[W]here the claimant's impairment is nonexertional-not manifested by a loss of strength or other physical ability—or is marked by a combination of exertional and non-exertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case." *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1983).

1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

### III. ALJ'S DECISION

After reviewing the medical record and hearing testimony, the ALJ evaluated Ms. Culotta's claims using the Social Security Administration's five-step sequential process and made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 19, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: borderline intellectual functioning, bipolar disorder, headaches, arthritis, obesity, and Hepatitis C (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(a), with the additional limitation that she can do work that occasionally requires balancing, kneeling, crawling, and climbing. Because of her mental impairments, she can perform jobs consisting of simple, routine, and repetitive tasks.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 9, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act since August 19, 2008, the date the application was filed (20 CFR 416.920(g)).

(Tr. 9-20).

### IV. SUMMARY OF EVIDENCE

At the time of her administrative hearing, Kimberly Culotta was thirty-eight years old, stood 4'11" tall, and weighed approximately 130 pounds. Tr. 28. Ms. Culotta has an eleventh-grade education as well as some training in cosmetology; she reported that she can read English, though she sometimes has difficulty with reading comprehension. Tr. 28, 44, 51. Ms. Culotta also has a substantial history of cocaine and heroin addiction. At her hearing, she reported that she had not used either drug for approximately three years. Tr. 41. She also reported that she was participating in a methadone program to treat her heroin addiction. *Id.* Ms. Culotta alleged disability due to hepatitis C, arthritis, and mental impairments. Tr. 28.

Ms. Culotta saw a variety of health care professionals between 2001 and 2009 for both medical and psychiatric treatment.

#### A. Evidence of Mental Impairments

Ms. Culotta was admitted to Sinai Hospital on March 22, 2001 for depression, cocaine dependence, and opiate dependence. Tr. 217-25. She was released on March 28, 2001 with improved mood and affect, but visited Sinai's outpatient psychiatric clinic on June 8, 2001 for additional treatment. Ms. Culotta visited Sinai's outpatient psychiatric clinic twice more in November 2001 for medical management of her mood swings and bipolar disorder but discontinued her visits. Tr. 227-28.

On February 4, 2003, Ms. Culotta was admitted to Sinai for treatment of an intentional drug overdose. Tr. 235-40. At the time, treating physicians noted that Ms. Culotta was suffering from bipolar disorder, depression, and polysubstance abuse. *Id.* One physician also noted that Ms. Culotta had a past history of noncompliance with medications and medical treatment. *Id.*

Ms. Culotta was again admitted to Sinai on June 2, 2003 for treatment of depression and suicide ideation. Tr. 241-49. The medical records reflect Ms. Culotta's history of bipolar disorder, polysubstance abuse, and noncompliance with outpatient treatment. The medical records also note that Ms. Culotta was abusing both heroin and cocaine at the time of this hospitalization. Tr. 249.

On July 29, 2004, Ms. Culotta visited the emergency department at Sinai Hospital and reported that she had taken an overdose of anti-schizophrenic medication – about 20 pills in all. Tr. 207-216. She also reported suicidal thoughts. *Id.* Ms. Culotta completed a detox treatment and Sinai medical staff informed her that she did not have schizophrenia and did not need anti-schizophrenic medication. *Id.* Ms. Culotta was diagnosed with depressive disorder, substance induced mood disorder, opiate dependence and cocaine abuse. *Id.* Her medical records from this hospitalization also note that Ms. Culotta had been noncompliant with her medications and that she had hoarded medications from prior admissions. *Id.* at 216.

On December 15, 2008, Dr. Mikhael Taller, M.D., evaluated Ms. Culotta on behalf of Maryland Disability Determination Services and prepared a psychiatric report in conjunction with his evaluation. Tr. 286-93. Dr. Taller's report notes that Ms. Culotta completed the eleventh grade, and that she described herself as an average student. Tr. 286. During the interview, Ms. Culotta stated that she had been in special education classes, but declined to

elaborate further. *Id.* Dr. Taller diagnosed Ms. Culotta with polysubstance dependence, personality disorder, and mood disorder. Tr. 288.

State consulting psychologist E. Edmunds, Ph.D., completed a mental residual functional capacity ("MRFC") assessment of Ms. Culotta on January 5, 2009. Tr. 294-31. In Section I of the MRFC assessment, Dr. Edmunds found that Ms. Culotta was moderately limited in eleven of twenty measured areas. Tr. 294-295. These areas of moderate limitation include the ability to respond appropriately to changes in the work setting; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Section III of Dr. Edmunds' report described Ms. Culotta as having "11th grade, special education, and limited work [experience]. There is history of past psych admissions for depression, SI, and overdose concurrent with opiate and cocaine abuse . . . ." Tr. 296. Also in Section III, Dr. Edmunds advised that

> While the claimant retains the ability to interact appropriately with others, she will experience some difficulty with mood and anxiety management which impacts her ability to maintain adequate social relations, respond appropriately to authority, and work effectively with others. Claimant would be expected to have some difficulty managing work related change and in setting useful personal goals. Overall, the claimant's residual functional capacity appears compatible with the performance of simple tasks on a prolonged basis.

*Id.* Dr. Edmunds diagnosed Ms. Culotta with bipolar disorder, mood disorder, post-traumatic stress disorder, a history of panic attacks, personality disorder, and a history of cocaine and opioid dependence. Tr. 301-06.

Psychiatrist Aliya Jones, M.D., who treated Ms. Culotta from February 19, 2008 through at least February 5, 2009, provided an assessment to the Maryland Disability Determination Services on February 8, 2009. Tr. 313-16. Dr. Jones noted that while Ms. Culotta suffered from

7

psychomotor retardation, feelings of worthlessness, and reduced energy, she was "[r]esponding well to current medications" and was "[d]oing much better since diagnosed with cirrhosis and treatment for this has begun." Tr. 316. Dr. Jones diagnosed Ms. Culotta with major depressive disorder, personality disorder with cluster B traits, and opioid dependence. Tr. 333. Dr. Jones also noted that Ms. Culotta's anti-depressive medication had been effective, that her mood was "OK", and that she only required sleeping medication three to four times per week. Tr. 333. Dr. Jones also noted that Ms. Culotta was currently compliant with her medications. Tr. 253-55.

On March 10, 2009, state consulting psychologist E. Lessans, Ph.D., completed a MRFC assessment of Ms. Culotta. Tr. 334-51. Dr. Lessans diagnosed Ms. Culotta with bipolar disorder, mood disorder, post-traumatic stress disorder, personality disorder, and a history of cocaine and opioid dependence. Tr. 337-42. Dr. Lessans found that Ms. Culotta was moderately limited in four of twenty tested areas. Tr. 348-49. Dr. Lessans reported that Ms. Culotta had made significant progress since the previous MRFC assessment. Tr. 350. Dr. Lessans also noted that "claimant's main issue appears to have been opioid dependence, and she has seen substantial improvement with methadone maintenance." *Id*.

Consulting psychologist Janet K. Anderson, Ph.D., administered several diagnostic tests to Ms. Culotta on February 23, 2010. Tr. 404. On the Wechsler Adult Intelligence Scale – IV (commonly known as an IQ test) Ms. Culotta scored a Verbal Comprehension Index of 72, a Perceptual Reasoning Index of 71, a Working Memory Index of 60, a Processing Speed Index of 56, and a Full Scale IQ of 60. Tr. 405. Dr. Anderson noted that "[s]ince Ms. Culotta was in Special Education throughout school, it was felt that she has always scored in this Extremely Low range," but did not refer to any evidence that Ms. Culotta had received low IQ scores in her younger years. *Id*. On academic achievement tests, Ms. Culotta scored between the fourth and

twelfth percentiles in word reading, sentence comprehension, spelling and math computation. Tr. 407. Dr. Anderson stated that Claimant's "academics are well Below Average and somewhat consistent with her overall levels of intellectual functioning. They are however, a bit higher than would be expected from her current IQ, and, certainly, it may be that she was somewhat higher functioning in the past and may be suffering from a mild dementia related to her mental health difficulties or, perhaps, due to years of drug abuse." *Id*. Dr. Anderson opined that Ms. Culotta was unable to work competitively. Tr. 408.

### B. Evidence of Physical Impairments

On April 16, 2008, Ms. Culotta had blood work done that included a test for rheumatoid arthritis factor. Tr. 256. Several of the reported results are listed as "high," but it is unclear whether those results relate to a diagnosis of rheumatoid arthritis. Tr. 256-59. On several occasions, Ms. Culotta reported to mental health professionals that she had arthritis. *See, e.g.,* Tr. 288.

On May 12, 2008 and July 5, 2008, gastroenterologist Sudhir Dutta, M.D. diagnosed Ms. Culotta with hepatitis C and noted that she was asymptomatic. Tr. 260-71. Dr. Dutta also noted that Ms. Culotta was obese. Tr. 266. On March 3, 2009, pathologist J. Dean Nuckols confirmed Dr. Dutta's diagnosis of hepatitis C infection after inspecting three liver biopsy samples. Tr. 393.

Ms. Culotta was admitted to Sinai Hospital on August 30, 2009 with a fractured left femur. Tr. 383. She underwent surgery to repair the fracture, and then returned for follow-up care on September 5, 2009. Tr. 364-85.

9

## V. ANALYSIS

Ms. Culotta argues that the ALJ erred at step three of the sequential evaluation process by rejecting the opinion of examining psychologist Dr. Anderson and finding that Ms. Culotta was not mentally retarded under listing 12.05 of the Listing of Impairments. Claimant further argues that the ALJ erred at step four of the sequential process by (i) by failing to properly discuss the opinion of non-examining state agency consultant Dr. Edmunds; and (ii) by finding that Claimant's history of noncompliance with medical treatment supported a finding of not disabled. Finally, Ms. Culotta claims that the ALJ erred at step five by inadequately describing Ms. Culotta's limitations in the hypothetical posed to the vocational expert ("VE").

### A. The ALJ Properly Evaluated Whether Ms. Culotta's Impairments Met or Equaled a Listing at Step Three of the Sequential Analysis.

Ms. Culotta appears to argue that the ALJ erred by finding that Ms. Culotta was not mentally retarded under Listing 12.05C of the Listing of Impairments. Listing 12.05, the listing for mental retardation, "contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria," the Social Security Administration must find that the claimant's impairment meets Listing 12.05. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A). The diagnostic description for Listing 12.05 states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset before age 22." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. Paragraph C lays out the following additional criteria: "A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other

mental impairment imposing an additional and significant work-related limitation of function." *Id*.

Ms. Culotta relies on the opinion of examining psychologist Dr. Anderson, who found that Claimant had a full scale IQ of 60 and opined that "[s]ince Ms. Culotta was in Special Education throughout school, it was felt that she has always scored in this Extremely Low [IQ] range." Tr. 405-06. In considering whether Ms. Culotta met the requirements of Listing 12.05, the ALJ considered Dr. Anderson's opinion as well as other evidence. The ALJ ultimately gave greater weight to the opinions of the state agency psychologists, neither of whom diagnosed the Claimant as mentally retarded. Tr. 12. The ALJ found that the state agency psychologists' opinions were supported by the record as a whole, which "simply contains no supporting documentation that this low level of intellectual functioning existed prior to the claimant turning 22-years-old." *Id*. The ALJ also considered the internal conflicts in Dr. Anderson's own report, which, with respect to Ms. Culotta's academic achievement scores, suggested that "certainly, it may be that she was somewhat higher functioning in the past and may be suffering from a mild dementia related to her mental health difficulties or, perhaps, due to years of drug abuse." Tr. 407.

The ALJ's conclusion that Ms. Culotta did not meet Listing 12.05 is supported by substantial evidence in the record. The Claimant's report that she had been enrolled in special education classes does not amount to a diagnosis of mental retardation, nor does Dr. Anderson's feeling that Ms. Culotta had probably always scored well below average on IQ tests. Simply put, the record does not show that Ms. Culotta's below-average intellectual functioning emerged prior to age twenty-two. Because she has not met the requirements of the diagnostic description

for mental retardation, Ms. Culotta cannot qualify as disabled under Listing 12.05C. The ALJ's step three finding was proper and will not be disturbed.

### B. The ALJ Did Not Improperly Deny Benefits Based on Ms. Culotta's History of Noncompliance with Medical Treatment.

Ms. Culotta argues that the ALJ improperly used her history of noncompliance with medical treatment as support for his finding that she is not disabled. It is true that if a symptom can be reasonably controlled by medication or treatment, it is not considered disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). It is also true that an ALJ denying a claim based on compliance must first apply the factors listed in Social Security Ruling 82-59. SSR 82-59, 1982 WL 31384 at *1 (1982).

In this case, the ALJ did not reject Ms. Culotta's claim for benefits based on her past history of noncompliance with medication and treatment. Rather, he considered the Claimant's well-documented past history of noncompliance when evaluating the credibility of her testimony. Social Security regulations require that ALJ consider a number of factors when assessing a claimant's credibility. These factors include objective medical evidence, the claimant's daily activities, factors that precipitate and aggravate the symptoms, and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p at *3, 1996 WL 374186 (July 2, 1996). The ALJ considered Ms. Culotta's history of noncompliance within a particularly appropriate context – while assessing the credibility of her complaints about symptom severity. The ALJ aptly noted that Ms. Culotta "has not been consistently compliant in taking her bipolar medication or following up with outpatient medical treatment. . . . [W]hen the claimant has been compliant with treatment, her bipolar condition stabilized." Tr. 18. For this reason and several others, the ALJ found Ms. Culotta to be only

partially credible with respect to the severity of her symptoms. Such a finding was not improper and does not require remand.

### C. The ALJ Improperly Calculated Ms. Culotta's RFC at Step Four of the Sequential Analysis.

Ms. Culotta argues that the ALJ did not properly consider the opinion of Dr. Edmunds, who found that Ms. Culotta is "moderately" limited in eleven of the areas included on the mental RFC assessment. As noted above, these areas of moderate limitation include the ability to respond appropriately to changes in the work setting; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 294-95.

> Social Security regulations require that the
>
> [R]FC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184 at *4, *7 (July 2, 1996). The RFC assessments must always consider and address medical source opinions. *Faulcon v. Astrue*, Docket No. 08-cv-1661-PWG, 2009 WL 4062091 at *3 (D.Md. Nov. 19, 2009). The ALJ's discussion of Ms. Culotta's mental limitations at steps two and three is not an RFC assessment and did not satisfy the ALJ's duties at step four of the sequential evaluation.[2] SSR 96-8p, in relevant part, states as follows:

---

[2] The Introduction to Listing 12.00 Mental Disorders, in relevant part, states:
    An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities that may be affected by mental disorders when our impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment.
20 CFR § 404, Subpt. P, App. 1 (2011); *see also* SSR 96-8p, 1996 WL 374184 at *4, *7 (July 2, 1996).

13

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

*Id.* at *4.

The ALJ's assessment is inadequate because it does not fully discuss the many moderate limitations identified by Dr. Edmunds in both Sections I and III of the MRFC form. The ALJ did not address the many moderate limitations included in Section I of the MRFC assessment. As a result, it is unclear whether an individual with eleven "moderate" limitations would be about to perform the work described in the ALJ's hypothetical.[3] In addition, the ALJ did not address the restrictions included in Section III of Dr. Edmunds' MRFC assessment. The hypotheticals presented by the ALJ during the hearing do not address Dr. Edmunds' findings that Ms. Culotta "will experience some difficulty with mood and anxiety management which impacts her ability to maintain adequate social relations, respond appropriately to authority, and work effectively with others." Tr. 14, 296. Likewise, the RFC contained in the ALJ's opinion does not reference these limitations on Ms. Culotta's ability to interact with others socially. Furthermore, the ALJ's opinion notes only that he assigned "greater weight to the opinion evidence provided by the State Agency as such evidence is most consistent with the residual functional capacity determined herein," Tr. 18, without discussing what aspects of the two different state agency psychologists' reports supported his RFC findings. The ALJ did not address the apparent ambiguities in Dr. Edmunds' report, *e.g.*, that "[m]otivation, persistence, A/C, and memory fluctuate due to the

---

[3] In fact, when questioned by Ms. Culotta's counsel at the hearing, the VE seemed to find that no work would be available to a hypothetical person with all of those moderate limitations. Tr. 61.

effects of the conditions" and that Ms. Culotta has mild to moderate limitations in social interactions but is able to adequately negotiate within the community. (Tr. 296.)

The ALJ's failure to specifically reference the limitations identified by Dr. Edmunds is improper because many of those limitations relate to abilities essential to unskilled work. *See Barton v. Astrue*, 495 F.Supp.2d 504, 511 (D.Md. 2007) (citing *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1054 (E.D.Wis. 2005)). The basic mental demands of unskilled work include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4 (1985). Because the ALJ's hypothetical did not properly reference the limitations reported by Dr. Edmunds, particularly those limitations dealing with the Claimant's ability to interact with others, it is unclear whether the jobs identified by the VE involved skills beyond the Claimant's RFC. As a result, this Court is unable to determine whether the ALJ's findings at steps four and five were supported by substantial evidence.

### D. This Court Cannot Yet Determine Whether the ALJ Erred at Step Five.

Ms. Culotta also argues that the ALJ erred in presenting his hypotheticals to the VE by inadequately discussing her limitations. When presenting hypotheticals to the VE, the ALJ asked the VE to assume a person of Claimant's age, education and work experience. Tr. 57. The ALJ also stated that, for mental limitations, "work is limited to simple routine repetitive involving simple work-related with few if any work place changes." Tr. 60; *see also* Tr. 57.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." *Fisher v. Barnhart,* 181 Fed. Appx. 359,

364 (4th Cir.2006) (unpublished opinion). Hypothetical questions should "adequately reflect" the plaintiff's residual functional capacity as found by the ALJ and supported by sufficient evidence, *id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir.2005)), and "fairly set out all of claimant's impairments." *Walker,* 889 F.2d at 50.

Because the ALJ erred at step four of the analysis, this Court cannot fully assess whether the ALJ erred at step five of his analysis. The Court does, however, note that hypotheticals limiting claimants to simple, routine, and repetitive tasks are not *per se* improper. *See, e.g., Carter v. Astrue*, Docket No. CBD-10-1882, 2011 WL 3273060 at *10 (D.Md. July 27, 2011) (finding that an ALJ's hypothetical, which included the limitations of "routine, repetitive, simple tasks," was reasonable).

## VI. CONCLUSION

Based on the foregoing, the Court's previous order, ECF No. 22, will stand. Claimant's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is DENIED, the Claimant's Alternative Motion for Remand is GRANTED, and this matter is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.


Dated: December 15, 2011                         \_\_\_\_/s/_____
                                                 Stephanie A. Gallagher
                                                 United States Magistrate Judge